United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL L.,[1] | Case No. 22-cv-05180-TSH |
| Plaintiff, | |
| v. | **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| KILOLO KIJAKAZI, | Re: Dkt. Nos. 23, 31 |
| Defendant. | |

## I.    INTRODUCTION

Plaintiff Crystal L. moves for summary judgment to reverse the decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 23.  Defendant cross-moves to affirm.  ECF No. 31.  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion for the following reasons.[2]

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 8, 10.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.   PROCEDURAL HISTORY

On July 10, 2020, Plaintiff filed an application for Social Security Disability Insurance and Supplemental Security Income benefits with a disability onset date of January 20, 2019.  AR 339-342.  Following denial at the initial and reconsideration levels, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR. 268-69.  An ALJ held a hearing on June 21, 2021 and issued an unfavorable decision on August 4, 2021.  AR 20-33.  The Appeals Council denied Plaintiff's request for review on August 2, 2022.  AR 1-7.  Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

## III.   ISSUES FOR REVIEW

Plaintiff raises two issues on appeal: (1) the ALJ Residual Functional Capacity ("RFC") determination is not supported by substantial evidence; and 2) the Vocational Witness ("VW") testimony was of no evidentiary value and legally insufficient.

## IV.   STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence."  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted).  Under this standard, the Court looks to the existing administrative record and asks "whether it contains 'sufficient evidence' to support the agency's factual determinations."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (simplified).  Substantial means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (simplified).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Garrison*, 759 F.3d at 1009 (citation omitted).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  *Id.* at 1010 (citation omitted).  If "the evidence

2

1      can reasonably support either affirming or reversing a decision," the Court may not substitute its

2      own judgment for that of the ALJ." *Id.* (citation omitted).

3              Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is

4      harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012). "[A]n error is harmless

5      so long as there remains substantial evidence supporting the ALJ's decision and the error does not

6      negate the validity of the ALJ's ultimate conclusion." *Id.* (simplified). But "[a] reviewing court

7      may not make independent findings based on the evidence before the ALJ to conclude that the

8      ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492. The Court is "constrained to review

9      the reasons the ALJ asserts." *Id.* (simplified).

10                                          **V.      DISCUSSION**

11     **A.      Framework for Determining Whether a Claimant Is Disabled**

12             A claimant is considered "disabled" under the Social Security Act if two requirements are

13     met. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the

14     claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of

15     any medically determinable physical or mental impairment which can be expected to result in

16     death or which has lasted or can be expected to last for a continuous period of not less than 12

17     months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe

18     enough that the claimant is unable to perform previous work and cannot, based on age, education,

19     and work experience "engage in any other kind of substantial gainful work which exists in the

20     national economy." *Id.* § 423(d)(2)(A).

21             The regulations promulgated by the Commissioner of Social Security provide for a "five-

22     step sequential evaluation process." 20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.*

23     § 416.920(a)(4) (same standard for supplemental security income). This process ends when the

24     ALJ can make a finding that the claimant is or is not disabled. *Id.* § 404.1520(a)(4). The claimant

25     bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir.

26     2020) (citation omitted).

27             At step one, the ALJ must determine if the claimant is presently engaged in a "substantial

28     gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that

United States District Court
Northern District of California

1    involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (simplified).  Here, the

2    ALJ determined Plaintiff had not performed substantial gainful activity since January 20, 2019.

3    AR 25.

4         At step two, the ALJ decides whether the claimant's impairment or combination of

5    impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

6    claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148

7    (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.

8    20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

9    impairments: degenerative disc disease; asthma; and essential hypertension.  AR 25.

10        At step three, the ALJ evaluates whether the claimant has an impairment or combination of

11   impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the

12   "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

13   describe impairments that are considered "to be severe enough to prevent an individual from doing

14   any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective

15   medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).

16   "For a claimant to show that his impairment matches a listing, it must meet all of the specified

17   medical criteria.  An impairment that manifests only some of those criteria, no matter how

18   severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a

19   claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent

20   to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering

21   age, education, and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined

22   Plaintiff did not have an impairment or combination of impairments meeting the listings.  AR 29.

23        If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

24   the claimant's RFC, defined as the most the claimant can still do despite their limitations (20

25   C.F.R. § 404.1545(a)(1)), and determines whether they are able to perform past relevant work,

26   defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful

27   activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. §

28   404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can perform past

United States District Court
Northern District of California

4

relevant work, the claimant is not disabled. *Id.* § 404.1520(f). Here, the ALJ determined Plaintiff

has the RFC to perform "light work, as defined in 20 C.F.R. 404.1560(b) and 416.967(b), except

she should avoid concentrated exposure to respiratory irritants." AR 29. Based on the RFC, the

ALJ concluded that Plaintiff "is capable of performing past relevant work as a quality control

technician (012.261-014, SVP 7, light, performed at medium). This work does not require the

performance of work-related activities precluded by the claimant's residual functional capacity."

AR 32.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a

significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting

*Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). To meet this burden, the ALJ may rely

on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt.

P, App. 2,[3] or on the testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted).

"[A] vocational expert or specialist may offer expert opinion testimony in response to a

hypothetical question about whether a person with the physical and mental limitations imposed by

the claimant's medical impairment(s) can meet the demands of the claimant's previous work,

either as the claimant actually performed it or as generally performed in the national economy."

20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources such as the Dictionary of

Occupational Titles ("DOT").[4] *Id.* Here, the ALJ determined that, even if precluded from her

prior skilled work, Plaintiff would be able to perform unskilled light work and thus would not be

---

[3] The grids "present, in table form, a short-hand method for determining the availability and
numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th
Cir. 2006) (citing *Tackett*, 180 F.3d at 1101). They consist of three tables, for sedentary work,
light work, and medium work, and a claimant's place on the applicable table depends on a matrix
of four factors: a claimant's age, education, previous work experience, and physical ability. *Id.*
"For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not
disabled' based on the number of jobs in the national economy in that category of physical-
exertional requirements." *Id.*
[4] The Dictionary of Occupational Titles by the United States Department of Labor, Employment &
Training Administration, may be relied upon "in evaluating whether the claimant is able to
perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).
The DOT classifies jobs by their exertional and skill requirements and may be a primary source of
information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1). The "best source for how
a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto v.
Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

United States District Court
Northern District of California

1    considered disabled.  AR 32-33.

2    **B.      New Evidence Submitted to Appeals Council**

3           Plaintiff submitted to the Appeals Council medical records which were not submitted to

4    the ALJ.  These documents encompass medical records from Marin Community Clinic, dated June

5    9, 2021 through December 23, 2021, as well as a December 29, 2021 medical source opinion from

6    Kiere Eichelberger, Ph.D.  AR 2, 10-13, 39-160.  Plaintiff argues this evidence should be

7    considered part of the administrative record for the Court to consider when reviewing the ALJ's

8    decision.  Pl's Mot. at 3.

9           "[W]hen the Appeals Council considers new evidence in deciding whether to review a

10   decision of the ALJ, that evidence becomes part of the administrative record, which the district

11   court must consider when reviewing the Commissioner's final decision for substantial evidence."

12   *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012); *see also Harman v.*

13   *Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("[W]e properly may consider the additional evidence

14   presented to the Appeals Council in determining whether the Commissioner's denial of benefits is

15   supported by substantial evidence . . . .").  Here, the Appeals Council stated that the additional

16   evidence provided by Plaintiff did "not show a reasonable probability that it would change the

17   outcome of the decision.  We did not exhibit this evidence."  AR 2.  While somewhat ambiguous,

18   the Court interprets this statement to mean that the Appeals Council considered the new evidence.

19   *See, e.g.*, *Franz v. Comm'r of Soc. Sec.*, No. 2:21-CV-583-KJN, 2022 WL 4537991, at *4 (E.D.

20   Cal. Sept. 28, 2022) ("The undersigned construes this as indicating Dr. Vega's statement was in

21   fact considered—otherwise the court cannot understand how the Council could have concluded the

22   opinion would not have changed the outcome."); *Blancett v. Saul*, No. 1:20-CV-00253-SKO, 2021

23   WL 1736880, at *4 (E.D. Cal. May 3, 2021) (collecting cases and determining that the most

24   plausible interpretation of the Appeals Council's explanation – that the evidence did not show a

25   reasonable probability that it would change the outcome of the case and they did not consider and

26   exhibit evidence – was that the Council did, in fact, consider the additional evidence); *Linnehan v.*

27   *Berryhill*, No. 17-CV-04146-JSC, 2018 WL 6267846, at *8 (N.D. Cal. July 31, 2018) ("The

28   Appeals Council cannot consider the evidence to conclude that it 'does not show a reasonable

United States District Court
Northern District of California

6

1    probability that it would change the outcome of the decision' and then exclude the evidence from

2    the record based on the illogical conclusion that '[w]e did not consider and exhibit this

3    evidence.'").  As such, the Court considers the additional evidence in determining whether, in light

4    of the record as a whole, the ALJ's decision is supported by substantial evidence.

5    **C.      Plaintiff's Subjective Testimony**

6            Plaintiff argues primarily that the ALJ erred in discounting Plaintiff's symptoms for back

7    pain, mental impairment, and pedal edema and this discrediting impacted the RFC determination.

8    Pl.'s Mot. at 4-13.  The ALJ determined that Plaintiff's testimony regarding these conditions could

9    reasonably be expected to cause the type of alleged symptoms, but that Plaintiff's testimony

10   regarding "the intensity, persistence and limiting effect of these symptoms are not found

11   consistent with the medical evidence and other evidence in the record to the extent inconsistent

12   with the findings herein for the reasons explained in this decision."  AR 30.

13          **1.      Legal Standard**

14          "In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ

15   must engage in a two-step analysis.  'First, the ALJ must determine whether the claimant has

16   presented objective medical evidence of an underlying impairment which could reasonably be

17   expected to produce the pain or other symptoms alleged.'"  *Vasquez v. Astrue*, 572 F.3d 586, 591

18   (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  And

19   second, "if the claimant meets the first test and there is no evidence of malingering, the ALJ can

20   only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear

21   and convincing reasons' for the rejection."  *Vasquez*, 572 F.3d at 591 (quoting *Smolen v. Chater*,

22   80 F.3d 1273, 1282 (9th Cir. 1996)).  "At the same time, the ALJ is not required to believe every

23   allegation of [symptoms], or else disability benefits would be available for the asking, a result

24   plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Molina*, 674 F.3d at 1112 (citation and internal

25   quotations omitted).  Along the same lines, "an individual's statements of symptoms alone are not

26   enough to establish the existence of a physical or mental impairment or disability."  SSR 16-3P,

27   2016 WL 1119029, at *2.  The clear and convincing standard "isn't whether our court is

28   convinced, but instead whether the ALJ's rationale is clear enough that it has the power to

United States District Court
Northern District of California

1    convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

2         **2.      Analysis**

3              **a.      Lumbar Spine Impairments**

4         The ALJ noted Plaintiff's testimony regarding her back pain during which she stated the

5    pain feels like vertebrae are "rubbing together" and that her "disc will slide out" and her muscles

6    "lock up." AR 30.  However, the ALJ found that Plaintiff had only minimal treatment for her

7    back, and that her April 16, 2021 x-rays revealed only mild degenerative spondylosis.  AR 30.

8    Plaintiff argues that the ALJ's reasons for discounting Plaintiff's allegations regarding back pain

9    were not supported by the overall evidence and points, in part, to new evidence in the form of an

10   MRI dated 11 days after the ALJ's decision.  Pl.'s Mot. at 5.

11        This Court finds that the additional evidence submitted to the Appeals Council calls into

12   question the ALJ's conclusions regarding Plaintiff's subjective pain.  First, the new evidence has a

13   bearing on the ALJ's reliance on Plaintiff's conservative treatment.  The ALJ found "the claimant

14   only has had minimal treatment for this condition during the relevant period.  She is prescribed

15   only ibuprofen and topical lidocaine patches . . . ."  AR 30.  "[E]vidence of 'conservative

16   treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."

17   *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428,

18   1434 (9th Cir. 1995)).  However, at the time of the hearing Plaintiff had an appointment with Dr.

19   Robert Byers for her back pain.  AR 60.  Dr. Byers and Plaintiff met in July 2021, and he ordered

20   an MRI, which occurred on August 15, 2021.  AR 40, 44.  Upon review of the August 2021 MRI,

21   Dr. Byers then prescribed additional treatment, including injections for core-strengthening and

22   physical therapy.  AR 46.  Although Dr. Byers' determination regarding treatment occurred after

23   the ALJ's decision, the initial appointment with Dr. Byers occurred prior to the ALJ decision, and

24   the Court finds the closeness in time supports that the MRI and resulting treatment plan relates to

25   her condition during the relevant time period.  *See Newman A. v. Berryhill*, No. 17-CV-03010-

26   JSC, 2019 WL 1385900, at *9 (N.D. Cal. Mar. 27, 2019) (deeming doctor's opinion relevant

27   where it related to treatment given before the ALJ's decision); *Cuadras v. Astrue*, No. 2:10-CV-

28   2142 GGH, 2011 WL 6936182, at *7 (E.D. Cal. Dec. 30, 2011) (finding records dated after ALJ

*United States District Court*
*Northern District of California*

8

1    decision were related to the relevant period where the records post-dated the decision by less than

2    two months and referred to conditions and symptoms that manifested well prior to the ALJ's

3    decision).  This additional prescribed treatment of injections and physical therapy cuts against the

4    ALJ's conclusion that Plaintiff was only provided minimal treatment.  *See Hunter v. Berryhill*, No.

5    CV 17-6006-PLA, 2018 WL 4026995, at \*15 (C.D. Cal. Aug. 21, 2018) (collecting cases and

6    finding two epidural injections and a ganglion block was not conservative treatment); *see also*

7    *Garrison*, 759 F.3d 995, 1015 n.20 (expressing "doubt that epidural steroid shots to the neck and

8    lower back qualify as 'conservative' medical treatment"); *Yang v. Barnhart*, No. ED CV 04-958-

9    PJW, 2006 WL 3694857, at \*4 (C.D. Cal. Dec. 12, 2006) (finding physical therapy, epidural

10   injections, and pain medication did not evidence conservative treatment for back pain).

11          Further, the new evidence potentially impacts the weight the ALJ gave Plaintiff's recent x-

12   ray.  In discounting Plaintiff's back pain the ALJ referred to Plaintiff's April 16, 2021 x-ray,

13   which the ALJ noted "revealed only mild degenerative spondylosis."  AR 30.  The ALJ compared

14   Plaintiff's April 16, 2021 x-ray with a 2014 MRI and suggested Plaintiff's condition was

15   unchanged.  AR 31.  Cursory review of Plaintiff's August 15, 2021 MRI provides evidence that

16   Plaintiff's spinal condition deteriorated at least some after the 2014 MRI.  *Compare* AR 44 (2021

17   MRI reflecting disc degeneration at L2-L3, disc degeneration and moderate loss of disc height as

18   well as mild-to-moderate left foraminal stenosis at L3-L4), *with* AR 750 (2014 MRI reflecting that

19   L2-L3 and L3-L4 are "normal").  This new evidence potentially negates the ALJ's reliance on the

20   April 2021 x-ray.  *See Colmenero v. Berryhill*, No. 1:16-cv-00649-GSA, 2018 WL 3689319, at

21   \*12 (E.D. Cal. Aug. 3, 2018) ("When a claimant's condition is deteriorating, the most recent

22   evidence is most probative.") (citing *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1982)).  In light

23   of the new evidence and its relevance, this Court cannot conclude that the April 2021 x-ray is a

24   clear and convincing reason to find Plaintiff's back pain less severe than she reports.  *See*

25   *Carmickle v. Colvin*, 645 F. App'x 575, 576 (9th Cir. 2016) ("In light of this report and the other

26   evidence the Appeals Council added to the record, which the ALJ never had the opportunity to

27   consider, we cannot conclude that substantial evidence supports the ALJ's decision.").

28          The ALJ also cited Plaintiff's ability to do seven loads of laundry in one day at the

United States District Court
Northern District of California

1    homeless shelter where she resides as a reason to discount the severity of her pain.  AR 30.  The

2    Court concludes this activity does not provide a clear and convincing reason to discount her

3    symptoms testimony.  "An adverse credibility finding based on activities may be proper 'if a

4    claimant engages in numerous daily activities involving skills that could be transferred to the

5    workplace.'"  *Jones v. Berryhill*, No. 18-CV-01857-WHO, 2019 WL 4645170, at *15 (N.D. Cal.

6    Sept. 24, 2019) (quoting *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)).  The Ninth Circuit has

7    "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are

8    inconsistent with testimony about pain, because impairments that would unquestionably preclude

9    work and all the pressures of a workplace environment will often be consistent with doing more

10   than merely resting in bed all day."  *Garrison*, 759 F.3d at 1016.  Here, Plaintiff testified that the

11   activity took about six hours, she was on her feet about an hour and a half to two hours, and upon

12   completing this chore her feet swelled up and her back locked.  AR 180.  The activity appears to

13   occur only once a week.  *See* AR 179 ("[Y]ou say you have a day they ask you to do laundry?

14   Yes.").  Given the limited time she was on her feet, the infrequency of the task, and the resulting

15   pain, the Court does not consider Plaintiff's ability to complete seven loads of laundry to be a

16   sound basis to discount her back pain.  To the extent the ALJ relied on Plaintiff's laundry chore as

17   a reason to discount her testimony regarding the intensity, persistence, and limiting effects of her

18   conditions, that reliance was not supported by clear and convincing reasons.

19          In light of the new evidence and the error in the ALJ's consideration of Plaintiff's daily

20   activities, the Court does not find clear and convincing reasons to discount Plaintiff's back pain

21   symptoms.  It is also clear that the ALJ's RFC assessment was impacted by his weighing of

22   Plaintiff's back pain testimony.  As discussed below, remand is appropriate.  *See Cantrell v.*

23   *Comm'r of Soc. Sec. Admin.*, 543 F. App'x 653, 654 (9th Cir. 2013) (remanding where ALJ

24   discounted plaintiff's self-reporting related to degenerative disc disease based on a lack of

25   supporting medical evidence and the Appeals Council incorporated an x-ray showing multilevel

26   degenerative changes which the court concluded "may have implications for the agency's reasons

27   for denying benefits."); *Janice D. H. v. Saul*, No. CV 18-08010-RAO, 2019 WL 7050220, at *13

28   (C.D. Cal. Dec. 23, 2019) (noting MRI provided to the Appeals Council documented a progression

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1  of Plaintiff's condition not previously before the ALJ and warranted remand).

2                    **b.    Mental Impairments**

3          Plaintiff also argues that the ALJ did not provide clear and convincing reasons for rejecting

4  Plaintiff's subjective symptoms testimony regarding her mental impairments.  Pl's Mot. at 8.

5  Plaintiff testified that her medication for depression and anxiety "has lessened it, but it hasn't

6  alleviated it."  AR 177.  She testified she still gets insomnia and will be up for 24 hours.  AR 177.

7  She testified that it does not take much for her to get anxiety and feel like she is going to explode.

8  AR 178.  She testified that she just stays in bed as much as possible and away from people.  AR

9  178.  In assessing Plaintiff's subjective symptoms regarding mental health, the ALJ noted that

10  Plaintiff admitted her medication helps, but that her mental impairments cause insomnia,

11  forgetfulness, and social isolation.  AR 30.  The ALJ stated that these allegations were

12  unsupported by the medical evidence of record where Plaintiff's mental status examinations were

13  consistently normal for the relevant period and the PHQ-9 and GAD-7 scores showed no more

14  than mild symptoms after the first two months of mental health treatment.[5]  AR 30.

15          Just as with Plaintiff's lower back pain, this Court finds that the additional evidence

16  submitted to the Appeals Council negates the reasons the ALJ provided to dismiss Plaintiff's

17  reported symptoms.  The ALJ noted that Plaintiff's mental status examinations were consistently

18  normal for the relevant period, which the Court finds an appropriate consideration.  *See* 20 C.F.R.

19  § 404.1529(c)(2) (when evaluating symptoms, ALJ considers consistency with objective medical

20  evidence); *see also Linda Jean T. v. Saul*, No. 19-CV-07738-DMR, 2021 WL 1893137, at *6

21  (N.D. Cal. May 11, 2021) ("As to the first reason, the ALJ wrote that Plaintiff's mental status

22  examinations do not support the degree of limitation alleged.  The court finds that this is a

23

24  _____

25  [5]  "The Patient Health Questionnaire known as the 'PHQ-9' 'is a[n] instrument for making criteria-based diagnoses of depressive and other mental disorders commonly encountered in primary care.'"  *Norman v. Berryhill*, No. 17-CV-04108-SI, 2018 WL 4519952, at *2 (N.D. Cal. Sept. 19, 2018) (quoting Kurt Kroenke, MD, et al., *The PHQ-9: Validity of a Brief Depression Severity Measure*, 16 J. Gen. Intern. Med. 606 (2001)).  "Like the PHQ-9, the Generalized Anxiety Disorder ('GAD')-7 is a self-administered diagnostic instrument to measure anxiety severity."  *Buechner v. Saul*, No. 20-CV-379-WMC, 2021 WL 457610, at *2 n.3 (W.D. Wis. Feb. 9, 2021) (citing Robert L. Spitzer, et al., *A Brief Measure for Assessing Generalized Anxiety Disorder: The GAD-7*, Arch Intern Med. (2006), https://www.researchgate.net/publication/7064924).

26

27

28

United States District Court
Northern District of California

1    specific, clear and convincing reason to discount Plaintiff's testimony; as discussed above,

2    treatment notes by Dr. Krishnan, Dr. Lee, and Model consistently reflect mental status

3    examinations that were largely within normal limits."); *Paulette N. v. Saul*, No. 20-CV-04950-SK,

4    2021 WL 4902421, at *7 (N.D. Cal. Oct. 21, 2021) (finding normal mental status examination,

5    along with failure to seek treatment and lack of mental health treatment notes, met the "specific,

6    clear, and convincing standard required to discount Plaintiff's testimony regarding her mental

7    health impairments.").  However, records submitted to the Appeals Council but not before the ALJ

8    show that Plaintiff's mental status examinations waned, and on June 9, 2021, Dr. Eichelberger's

9    mental status examination reflected that her mood was "depressed anxious." AR 99.  On August

10   4, 2021, Dr. Jamie Sanders reported in Plaintiff's mental status examination an anxious mood,

11   thought content of preoccupations and ruminations, and cognition marked by impairment of fund

12   of knowledge and short-term memory.  AR 111.

13          Further, while the ALJ also noted that Plaintiff's PHQ-9 and GAD-7 scores reflected only

14   mild symptoms after the first two months of treatment, additional evidence shows that on July 23,

15   2021, Plaintiff registered a GAD-7 score reflecting moderate anxiety.  AR 101.  GAD-7 and PHQ-

16   9 scores after the ALJ's determination, while less relevant, also reflect moderate to severe anxiety

17   and depression.  *See* AR 119, 131, 142, 147.  Plaintiff's scores reflecting moderate depression and

18   anxiety do not provide support to discount her testimony.  *See Michael F. v. Kijakazi*, No. 3:20-

19   CV-00524-AHG, 2021 WL 4473176, at *9-10 (S.D. Cal. Sept. 30, 2021) (citing PHQ-9 scores in

20   the moderate depression range as part of conclusion that plaintiff's mental impairments were

21   moderate to moderately severe); *cf. Smartt*, 53 F.4th at 498 ("When objective medical evidence in

22   the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as

23   undercutting such testimony.").

24          Additionally, Plaintiff's new evidence complicates the ALJ's final cited reason for

25   discounting Plaintiff's testimony – that Plaintiff's condition improved with treatment.  AR 27.

26   Improvement with treatment is an appropriate consideration in assessing subjective symptoms.  20

27   C.F.R. § 404.1529(c)(3)(iv)-(v) (effectiveness of medication to alleviate pain as well as treatment

28   other than medication are both factors relevant to symptoms).  Plaintiff concedes that she reported

12

1   improvement with medication, but argues that this improvement occurred during times she was

2   removed from the stress of a job environment.  Pl.'s Mot. at 8-9.  The Court recognizes that

3   "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an

4   understanding of the patient's overall well-being and the nature of her symptoms."  *Garrison*, 759

5   F.3d at 1017.  "Cycles of improvement and debilitating symptoms are a common occurrence, and

6   in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement

7   over a period of months or years and to treat them as a basis for concluding a claimant is capable

8   of working."  *Id.*  Here, the Court agrees with Plaintiff that her improvement does not appear to

9   have been consistent, as the new evidence suggests that it was possibly influenced by

10  circumstance.  The ALJ understandably did not take into account Plaintiff's regression in mental

11  health symptoms, as he did not have access to these records.

12          In light of the new evidence, the Court finds that the ALJ's determination is not supported

13  by clear and convincing reasons.  As discussed below, remand is appropriate, and, as with

14  Plaintiff's lower back pain, while the Court does not conclude that consideration of the evidence

15  will necessarily result in benefits, it is clear that the ALJ's RFC assessment was impacted by his

16  weighing of Plaintiff's mental health testimony.  *See Cantrell*, 543 F. App'x at 654.

17                          **c.      Pedal Edema Impairment**

18          Plaintiff also argues that the ALJ improperly discounted the subjective pain testimony

19  regarding her pedal edema.  Pl.'s Mot. at 11-12.  Plaintiff testified that her legs begin to swell if

20  she stands for more than an hour.  AR 30.  The ALJ found the persistence and severity of

21  Plaintiff's symptoms were inconsistent with the record evidence, specifically Plaintiff's edema did

22  not meet the durational requirements and her testimony noted improvement.  AR 30.  The Court

23  finds, in light of the additional evidence presented to the Appeals Council that was not before the

24  ALJ, the ALJ's reasoning is no longer clear and convincing.

25          The ALJ stated that Plaintiff's pedal edema did not meet the durational requirement of

26  severity because it was first reported May 2020, last observed July 1, 2020, and last discussed

27  January 20, 2021.  AR 30.  In determining the severity requirement was not met, the ALJ stated

28  that there were no reports of edema in Plaintiff's January 20, 2021 physical examination and no

United States District Court
Northern District of California

1    references to the issue therafter.  AR 26.  The ALJ noted that on January 20, 2021 the treating

2    physician reduced Plaintiff's Lasix to every other day.  AR 26.  In the evidence submitted to the

3    Appeals Council, Plaintiff produced new evidence of an appointment with Dr. Maria Webster-

4    Longin on July 13, 2021, where there was report of leg swelling and it was noted that it improved

5    with daily lasix.  AR 71.  The Court finds Plaintiff's new evidence directly bears on the ALJ's

6    finding that the pedal edema had resolved as of January 20, 2021 and thus the ALJ's conclusion

7    that the pedal edema resolved cannot be a clear and convincing reason to discount Plaintiff's

8    symptoms.  *See Neal B. v. Saul*, No. 2:19-CV-03283-MAA, 2020 WL 2468763, at *3 (C.D. Cal.

9    May 13, 2020) (holding that an ALJ's findings were unsupported by substantial evidence because

10   the ALJ found that the plaintiff had a "possible" diagnosis of multiple sclerosis and the plaintiff

11   produced to the Appeals Council records showing a diagnosis of MS).

12          With new evidence negating the ALJ's conclusion that the pedal edema resolved, the Court

13   finds that the ALJ has not otherwise provided clear and convincing reasons for discounting

14   Plaintiff's testimony.  The ALJ refers to notes of improvement in her pedal edema, but does not

15   further explain why this improvement is inconsistent with Plaintiff's testimony regarding her pain.

16   *See Alejandra V. O. v. Saul*, No. 20CV1634-AJB-LL, 2021 WL 3022671, at *8 (S.D. Cal. July 16,

17   2021), (finding same), *report and recommendation adopted sub nom. Alejandra V. O. v. Kijakazi*,

18   No. 20-CV-01634-AJB-LL, 2021 WL 8153633 (S.D. Cal. Aug. 26, 2021).  Plaintiff's additional

19   evidence suggests that she still had ongoing issues with pedal edema.  With regard to lack of

20   treatment after January 20, 2021, the record does not show that the ALJ considered possible

21   reasons for Plaintiff's lack of treatment.  *See Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of*

22   *Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017) (An ALJ will not find the

23   intensity or persistence of an individual's symptoms inconsistent with the record on the basis of

24   the frequency of treatment sought by an individual without considering the possible reasons she

25   may have sought treatment consistent with the degree of her complaints).  Plaintiff's testimony

26   that her legs "look like human legs," rather than "elephant legs" does not contradict her additional

27   testimony that her legs swelled if she stood for more than an hour.  *Compare Berry v. Astrue*, 622

28   F.3d 1228, 1234-35 (9th Cir. 2010) (discounting plaintiff's testimony that he was severely limited

United States District Court
Northern District of California

1    in completing tasks because plaintiff made contradicting statements to medical staff that he

2    engaged in many activities).  As discussed above, the Court does not consider Plaintiff's weekly

3    chore of laundry to be a daily activity providing a clear and convincing reason to discount the

4    severity of Plaintiff's symptoms.  Plaintiff testified that after completing the task, where she was

5    on her feet for between 90 minutes and two hours, her feet were swollen and painful such that she

6    had her shoes off during the testimony the next day.  AR 179-180.

7         As such, the Court finds that the new evidence regarding Plaintiff's symptoms calls into

8    question the ALJ's reasons for concluding Plaintiff's pedal edema symptoms were less severe than

9    she reported.  The ALJ's findings regarding Plaintiff's symptoms had a direct impact on the ALJ's

10   assessment of her RFC as the ALJ did not factor Plaintiff's pedal edema into the RFC

11   determination.  As discussed below, remand is appropriate.

12   **D.    Residual Functional Capacity Determination and New Evidence**

13        RFC is the most a claimant can do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  It

14   is assessed by considering all the relevant evidence in a claimant's case record.  *Id.*  When a case

15   is before an ALJ, it is the ALJ's responsibility to assess a claimant's RFC.  20 C.F.R. §

16   404.1546(c); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is

17   the responsibility of the ALJ, not the claimant's physician, to determine residual functional

18   capacity.").  "Generally, the more consistent an opinion is with the record as a whole, the more

19   weight [the ALJ] will give to that opinion."  20 C.F.R. § 416.927(c)(4).

20        Plaintiff argues that Dr. Eichelberger's December 29, 2021 report should be considered

21   and reflects more severe mental impairment than was assessed for Plaintiff's RFC.  Pl's Motion at

22   10.  Dr. Eichelberger was Plaintiff's treating psychologist from June 2021 through December

23   2021, and submitted a report dated December 29, 2021 stating, in part, that she did not believe that

24   Plaintiff was capable of sustaining competitive work and would reasonably be absent from work

25   five times a month or more.  AR 12-13.  Although Dr. Eichelberger's report was completed after

26   the ALJ's decision on August 4, 2021, the Court finds that it relates to the period before the ALJ's

27   decision as it specifically states it covers the period January 2019 to August 2021.  *See Baker v.*

28   *Colvin*, No. 16-CV-00771-EMC, 2016 WL 5869944, at *4 (N.D. Cal. Oct. 7, 2016) ("Under well-

1    established case law, evidence dated *after* an ALJ's decision can still be related to the period

2    *before* the ALJ's decision.") (collecting cases).  As Dr. Eichelberger's report was completed over

3    four months after the ALJ's determination, it is also considered less persuasive.  *See Macri v.*

4    *Chater*, 93 F.3d 540, 544 (9th Cir. 1996) ("Dr. Hanbery's 1993 reports were issued after the

5    Commissioner's decision, so they are less persuasive.").  Plaintiff traces the origins of the *Macri*

6    decision, and argues it is inapplicable because in the original authority, *Key v. Heckler*, the

7    plaintiff sought an expert's opinion after the ALJ's decision.  Pl's Reply at 4.  There is no debate

8    that in *Macri*, a published Ninth Circuit opinion, the Court found the treating physician's report

9    less persuasive because of its date of issuance.  *See Macri*, 93 F.3d at 544.  Thus, the Court finds

10   such authority applicable and provides Dr. Eichelberger's opinion should be afforded less weight.

11        However, that Dr. Eichelberger's report is afforded less persuasive effect is not to say that

12   Dr. Eichelberger's report is afforded no persuasive effect.  This case is similar to *Brewes*.  682

13   F.3d at 1163-64.  There, a vocational expert testified that if a person with the plaintiff's

14   characteristics were to miss two or more days of work per month, she would be unemployable, but

15   that otherwise plaintiff would be able to work a number of jobs.  The ALJ relied on the vocational

16   expert and concluded that plaintiff could work a number of jobs and was not disabled.  *Id.* at 1163.

17   In response, the plaintiff submitted a letter from her treating psychologist and nurse practitioner

18   detailing her diagnosis and explaining that it was likely she would miss quite a few days a month.

19   *Id.*  Incorporating this letter into the record as it was considered by the Appeals Council, the Ninth

20   Circuit concluded that the ALJ's findings were unsupported by substantial evidence given the

21   contents of the letter.  *Id.* at 1164.

22        Here, there may be basis to give Dr. Eichelberger's report less weight based on its timing

23   and its lack of detail.  However, the Court finds that, with the inclusion of Dr. Eichelberger's

24   opinion specifically responding to the testimony of the vocational expert, there is not substantial

25   evidence in support of the ALJ's RFC assessment.  In finding Plaintiff's impairments non-severe

26   and in finding persuasive the opinions of State agency psychiatric consultants Dr. R.A. Tyl and

27   Dr. S. Jacobson assessing only mild limitations, the ALJ specifically cited that Plaintiff exhibited

28   moderate symptomology for only the first two months of her psychiatric treatment.  AR 27-28.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The ALJ also remarked that Plaintiff has exhibited consistent improvement with mild symptoms

2    and normal mental status examination for most of the relevant period.  AR 28.  Based on the most

3    recent records submitted to the ALJ, Plaintiff's mental status examination reflected a mood of

4    "anxious other: mild, improved."  AR 780.  As discussed above, the records submitted to the

5    Appeals Council show that Plaintiff's mental health symptoms waned, and on June 9, 2021, Dr.

6    Eichelberger's mental status examination reflected that her mood was "depressed anxious."  AR

7    99 (June 9, 2021 mental status examination reflecting "depressed anxious" mood); AR 101 (July

8    23, 2021 GAD-7 score registering moderate anxiety); AR 111 (August 4, 2021 mental status

9    examination reflecting an anxious mood, thought content of preoccupations and ruminations, and

10   cognition marked by impairment of fund of knowledge and short-term memory).  In light of this

11   additional medical evidence negating the ALJ's reliance on Plaintiff's improvement of mental

12   symptoms, the Court finds that Dr. Eichelberger's assessment may well be considered consistent

13   and supported by the record.

14          While it is not clear from the record that the ALJ would be required to award benefits

15   based on Dr. Eichelberger's assessment, the ALJ is the appropriate adjudicator to resolve this new

16   and potentially conflicting evidence.  *See Hall v. Berryhill*, 717 F. App'x 708, 711 (9th Cir. 2017)

17   (remanding based on a therapist's addendum noting plaintiff would miss more than one day of

18   work per month, but noting "[i]t is not clear from the administrative record that the ALJ would be

19   required to award benefits if the medical evidence were reevaluated with Mr. Arnold's November

20   2011 addendum to his July 2011 opinion.").

21   **E.      Vocational Witness Testimony**

22          Plaintiff also argues that the VW testimony was of no evidentiary value and legally

23   insufficient.  AR 13-14.  Plaintiff's arguments on this point, however, rely heavily on her

24   arguments that the ALJ erred in assessing Plaintiff's limitations related to mental health, lumber

25   spine impairment, and lower back impairment.  Because the Court agrees that additional evidence

26   submitted to the Appeals Council calls into question the ALJ's determination of these limitations,

27   the Court remands on this issue as well.  On remand, the ALJ must ensure that the VW testimony

28   reflects whatever limitations the ALJ determines are supported by the additional evidence.

17

**F.      Remedy**

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits.  The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for a rehearing."  42 U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019.  "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).  However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated."  *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted).  It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).

Here, the ALJ did not have the opportunity to consider pertinent evidence when evaluating Plaintiff's disability claim, but it is not clear that the ALJ would be required to find Plaintiff disabled.  Accordingly, remand for further proceedings is appropriate.

## VI.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion, **DENIES** Defendant's cross-motion, and **REVERSES** the ALJ's decision.  This matter is **REMANDED** for further administrative proceedings consistent with this order.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated:  November 21, 2023

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

18